**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------X
PAUL BARNHURST,

                                    Movant,                              **26 Misc. 123 (JPC) (GS)**

                    -against-
                                                                        **REPORT &**
DAVID ZWICK, et al.,                                                    **RECOMMENDATION**

                                    Respondents.
-------------------------------------------------------------------------X
**GARY STEIN, United States Magistrate Judge:**

Petitioner Paul Barnhurst ("Barnhurst" or "Movant") brings this motion to

quash an arbitral summons for testimony issued in connection with an arbitration

to which Respondents are parties.[1]  For the reasons explained below, however, this

Court lacks the legal authority to rule on Barnhurst's motion to quash.  Accordingly,

the undersigned respectfully recommends that Barnhurst's motion to quash the

arbitral summons be **DENIED** without prejudice.[2]

---

[1] Respondents are David Zwick, the Zwick Dynasty Trust, John Scott Cooper (individually and as personal representative of the Estate of Peter Cooper), Southlake Investors, a Delaware Multiple Series LLC (a/k/a Southlake Partners), Doug Feirstein, Meillarec Financial LLC, Jericho Hartley, John E. Abdo Trustee UTD 3/15/76 FBO John E. Abdo, Michael Seligsohn, Feirstein Family Holdings LLP, Janice Feirstein Trust dtd May 11, 2000, Stephen Kelley, Corey O'Mara, Canaan Holbrook, Dave Kielkucki, Nathan Bradley Fleisher, Rene Mendoza, Jenn Scott (f/k/a Jenn Langteau), Kenneth Lee Hite, Ross Tannenbaum, William Trenchard, Ben Ling, Uncork Capital, Inc (f/k/a SoftTech VC, Inc.), The Wolfington Companies, LLC, and Will Walton.

[2] Courts have treated rulings as to the enforceability of an arbitral summons as dispositive and thus beyond the authority of a magistrate judge to definitively resolve.  *See Maine Cmty. Health Options v. CVS Pharmacy, Inc.*, No. CV 20-10JJM, 2020 WL 1130057, at *1 (D.R.I. Mar. 9, 2020) (finding that resolution of petition for enforcement of arbitral subpoena is "outcome-determinative" and therefore necessitates a report and recommendation); *Westlake Vinyls, Inc. v. Cooke*, No. 3:18-MC-00018-DJH-LLK, 2018 WL 4868993, at *1 (W.D. Ky. Aug. 21, 2018) ("Because enforcement or refusal to enforce the arbitrators' subpoena in this case would dispose of the entire matter before the Court as the underlying action is not before the Court, the Court will treat the pending petition to enforce subpoena as case-dispositive and proceed by way of a report and recommendation."), *R&R adopted*, 2018 WL 5306665 (W.D. Ky. Oct. 16, 2018).  Accordingly, the undersigned issues this ruling as a report and recommendation.

## BACKGROUND

This proceeding arises from an arbitration before the American Arbitration Association ("AAA") entitled *Zwick et al. v. Audatex North America, LLC, Solera Holdings, LLC*, AAA Case No. 01-24-0006-9979 (the "Arbitration"). Respondents here are the claimants in the Arbitration, which was brought pursuant to an Arbitration Agreement, dated as of July 15, 2024, between Respondents and the respondents in the Arbitration, Audatex North America, LLC and Solera Holdings, LLC. (Dkt. No. 6 Ex. 1). The Arbitration Agreement states that "[t]he Arbitration shall be conducted in New York City, New York, by a panel of three arbitrators[.]" (*Id.* at 1). The final arbitration hearing is scheduled to take place on June 1, 2026, in New York City. (Dkt. No. 17 ("Mot.") at 3).[3]

On March 10, 2026, the arbitrators served Barnhurst with a Summons pursuant to their authority under "Section 7 of the United States Arbitration Act." (Dkt. No. 3 ("Barnhurst Decl.") ¶ 7 & Ex. A).[4] Barnhurst was summonsed to "attend as a witness at a hearing" located in Salt Lake City, Utah, on April 22, 2026. (*Id.* Ex. A). Barnhurst, a Utah resident, is not a party to the Arbitration, but was

---

[3] Movant has filed three versions of his memorandum of law in this matter: Docket Nos. 2, 6, and 17. The first amended memorandum attached the relevant Arbitration Agreement as an exhibit. (*See* Dkt. No. 6 Ex. 1). The second amended memorandum added background and discussion regarding subject matter jurisdiction, without attaching the Arbitration Agreement. (*See* Dkt. No. 17 at 5–7). This Report and Recommendation generally cites to Movant's last filing (Dkt. No. 17), except when referring to the Arbitration Agreement.

[4] Section 7 of the Federal Arbitration Act provides, *inter alia*, that the arbitrators "may summon in writing any person to attend before them or any of them as a witness and in a proper case to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case." 9 U.S.C. § 7. An arbitral summons is the functional equivalent of a court subpoena.

employed by Solera Holdings, LLC ("Solera"), one of the parties to the Arbitration, until 2022. (*Id.* ¶¶ 2–4). The Summons advised Barnhurst that if he refused to obey the Summons, "the United States District Court for the District of Utah or a competent court of the State of Utah may compel your attendance, or punish you for contempt[.]" (*Id.* Ex. A).

Barnhurst filed the instant motion to quash before this Court on March 20, 2026, along with a supporting memorandum of law and declaration. (Dkt. Nos. 1–3). Barnhurst argues that (1) this Court is the only proper venue to entertain a motion to quash the Summons, and (2) the Summons is unenforceable against him, a nonparty who lives over 100 miles from the seat of the Arbitration in New York. (Mot. at 7–9).

More specifically, Barnhurst argues that this Court has "exclusive jurisdiction to enforce or quash the Summons," citing Section 7 of the Federal Arbitration Act ("FAA"). (*Id.* at 7). Section 7 of the FAA provides, in relevant part, that if a person refuses to obey a summons, "upon petition the United States district court for the district in which [the] arbitrators, or a majority of them, are sitting may compel the attendance of such person[.]" 9 U.S.C. § 7. Barnhurst contends that arbitrators can be sitting in only one location, and that in this case, that location is New York City, the designated seat of the Arbitration in the Arbitration Agreement. (Mot. at 7–8). As a result, Barnhurst contends, "only this Court has authority to enforce the summons." (*Id.* at 8).

Barnhurst then claims that the Summons is unenforceable because he resides more than 100 miles from New York City.  (*Id.*).  He points to Section 7, which states that an arbitral summons may be enforced "in the same manner provided by law for securing the attendance of witnesses[.]"  (*Id.* (quoting 9 U.S.C. § 7)).  Barnhurst contends that this language incorporates the geographical limitation in Rule 45(c)(1)(A) of the Federal Rules of Civil Procedure, which only permits a witness to be compelled to testify at a hearing within 100 miles of the witness's residence.  (*Id.* at 8–9).  Although the Summons provides for the hearing to take place in Salt Lake City, less than 100 miles from Barnhurst's home (*id.* at 3), Barnhurst argues that "[c]ourts in this Circuit and others have held that the 100-mile limit in Rule 45 limits enforcement of third-party arbitral subpoenas to within 100 miles of the arbitral seat."  (*Id.* at 8–9).

Respondents submitted their opposition on April 9, 2026, claiming that Utah, not New York, is the proper location for Barnhurst's motion to quash, and that Barnhurst can be compelled to testify in Utah.  (Dkt. No. 11 ("Opp.")).  Specifically, Respondents argue that under Rule 45, Barnhurst's motion must be brought in the district where "compliance is required," which is not this District.  (*Id.* at 2 (citing Fed. R. Civ. P. 45(d)(3)(A))).  Next, Respondents argue that Section 7 of the FAA "does not provide exclusive jurisdiction for a motion to enforce in the district where the arbitrators 'are sitting.'"  (*Id.*).  Rather, Respondents claim that under *Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co.,* 529 U.S. 193 (2000), the Court should find that "all of the venue provisions in the FAA," including Section 7, are

4

"permissive," allowing for Section 7 enforcement actions to be brought "in any district court deemed appropriate under the general venue statute, 28 U.S.C. § 1391, not just where the arbitrators 'are sitting.'" (*Id.* at 3–7).

Lastly, Respondents argue that the arbitration panel has the authority to compel Barnhurst to testify at a special hearing in Utah. (*Id.* at 9–11). While acknowledging that the Arbitration Agreement states that the Arbitration "shall be conducted in New York City," Respondents claim that this "doesn't resolve the question of whether special hearings can be conducted at other locations." (*Id.* at 9). Respondents contend that such special hearings are permissible, relying in part on AAA Rule 12, which grants the authority to "conduct special hearings for document production purposes or otherwise *at other locations*" beyond the seat of the arbitration. (*Id.* at 9–10) (emphasis in original).

Barnhurst submitted a reply brief on April 16, 2026 (Dkt. No. 15 ("Reply")), and the Court held oral argument on the motion on April 20, 2026. (*See* Dkt. No. 13; Dkt. No. 19 (Transcript of Oral Argument ("Tr."))). The day before oral argument, the Court issued an Order requiring the parties to "be prepared to discuss both the citizenship of the relevant parties . . . and the amount-in-controversy requirement," so that the Court could be satisfied that it has subject matter jurisdiction over the action. (Dkt. No. 16). This was necessary, the Order explained, because neither side's submissions set forth any allegations or argument addressing the issue of subject matter jurisdiction. (*Id.*).

5

Following the oral argument, both parties submitted additional filings that purport to establish diversity jurisdiction.  First, Barnhurst filed an amended Motion, stating that he is a "resident and citizen of Utah," that he is "unaware of any Respondent with Utah citizenship," and that the $75,000 amount-in-controversy requirement is satisfied because Respondents seek $90 million worth of damages in the Arbitration and represented at oral argument that Barnhurst's testimony was "central to their case."  (Mot. at 5–7).  Thereafter, Respondents filed an initial and then an amended "Submission on Diversity Jurisdiction" and related Rule 7.1 Disclosure Statement, representing that none of the Respondents (including entities such as limited liability companies, limited liability partnerships, and trusts) is a citizen of Utah.  (Dkt. Nos. 21 & 22, 24 & 25).[5]  Rather, the Respondents are citizens of Florida, Texas, Maryland, California, Washington, and Mississippi.  (Dkt. No. 25 at 3).  Respondents also assert that Barnhurst's testimony "has the potential to impact the outcome of the underlying arbitration . . . by an amount greater than $75,000[.]"  (*Id*. at 2).  Thus, no party disputes that this Court has subject matter jurisdiction over the instant motion.

---

[5] The Court found Respondents' initial Submission on Diversity Jurisdiction and Rule 7.1 Statement "insufficient to establish subject matter jurisdiction," as Respondents failed to "name—and identify the citizenship of—every individual or entity whose citizenship is attributed to [Respondents]" under Federal Rule of Civil Procedure 7.1(a)(2).  (Dkt. No. 23 at 1–2).  In response, Respondents filed an amended submission and Rule 7.1 statement on May 4, 2026.  (Dkt. Nos. 24 & 25).  The amended filings now list the citizenship of each member of the LLC and LLP Respondents, as well as the citizenship of trustees for the trust Respondents.  (*See* Dkt. No. 24 Ex. 1; Dkt. No. 25 at 1 (stating that the updated submission lists the "the member(s) and . . . citizenship" of the "LLC and LLP parties," and lists the citizenship of trustees for the trust entities, which are all "fiduciary trusts")).

## DISCUSSION

### A.  Subject Matter Jurisdiction

As a preliminary matter, this Court finds that the parties have established diversity jurisdiction under 28 U.S.C. § 1332.  A federal court has "an independent obligation to satisfy itself that it has subject matter jurisdiction[.]" *Forrest v. Unifund Fin. Grp., Inc.*, No. 04 Civ. 5151 (LTS), 2005 WL 1087490, at \*2 (S.D.N.Y. May 6, 2025).  And "parties invoking Section 7 must establish a basis for subject matter jurisdiction independent of the FAA." *Stolt-Nielsen SA v. Celanese AG*, 430 F.3d 567, 572 (2d Cir. 2005).

District courts have "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between citizens of different States."  28 U.S.C. § 1332(a)(1).  In analyzing diversity in a case involving the enforceability of an arbitral summons, courts consider only the citizenship of the parties before it, and do not "look through" to the citizenship of other parties to the underlying arbitration. *Washington Nat'l Ins. Co. v. OBEX Grp. LLC*, 958 F.3d 126, 134 (2d Cir. 2020).[6]  However, in determining whether the amount-in-controversy requirement is satisfied, courts do look to the amount at issue in the underlying arbitration, as well as to the importance of the evidence sought. *Id.* at 135 (finding

---

[6] Some Respondents in this action are LLCs, LLPs, or trusts.  LLC and LLP citizenship is "determined by reference to the citizenship of its members." *Monroe Staffing Servs., LLC v. Whitaker*, No. 20 Civ. 1716 (GBD) (BCM), 2023 WL 4285292, at \*7 (S.D.N.Y. June 9, 2023), *R&R adopted*, 2023 WL 4249012 (S.D.N.Y. June 29, 2023) (citation omitted).  For trusts, "the citizenship of the trustees" is determinative for jurisdictional purposes. *E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925, 931 (2d Cir. 1998).

jurisdiction where petitioner sought arbitral award of $134 million; "even if the documents required by the summonses pertain to only a small fraction of the award sought, the amount in controversy requirement would still be satisfied") (cleaned up); *see also Katena Computing Techs., Inc. v. DeNaut*, No. 3:23-MC-48 (SDV), 2023 WL 6858717, at *2 (D. Conn. Oct. 4, 2023) (finding amount-in-controversy satisfied due to $23 million at stake in underlying arbitration).

As a Utah citizen, Barnhurst is diverse from all Respondents in this action, who are citizens of Florida, Texas, Maryland, California, Washington, and Mississippi.  (Dkt. No. 24 Ex. 1).  Thus, complete diversity of citizenship exists.  In addition, Respondents seek damages of "almost $90 million" in the underlying Arbitration (Dkt. No. 25 at 2), and state that Barnhurst's testimony is "fundamental" to the Arbitration.  (Tr. at 37:16–23 (explaining that Respondents believe Barnhurst, who was in Solera's finance department, was directed to deliberately miscalculate earnout payments, the issue that forms the crux of the dispute in the Arbitration)).  Thus, the amount-in-controversy requirement is satisfied.  *See OBEX*, 958 F.3d at 135.  This Court therefore has subject matter jurisdiction over the action.

## B.  Authority Over Motion To Quash an Arbitral Summons

Although the parties have established that subject matter jurisdiction exists under 28 U.S.C. § 1332, Barnhurst's motion raises another threshold issue: whether, and if so on what basis, this Court has the authority to quash an arbitral summons.  For the reasons described below, the Court concludes that it lacks such

authority in this case, under either Section 7 of the FAA or Federal Rule of Civil Procedure 45, and that this action must, in consequence, be dismissed.

### 1. Section 7 of the FAA

In his briefs, as well as at oral argument, Barnhurst relies on Section 7 of the FAA as the source of the Court's authority to quash the Summons. (*See* Mot. at 7 (stating that "[t]his Court has exclusive jurisdiction to enforce or quash the Summons" and citing Section 7); Reply at 7 (arguing that "[t]his is the only Court that has any authority pursuant to the FAA to enforce or quash the Summons"); Tr. at 10:16–11:13, 19:6–11). Respondents, however, argue that Barnhurst has filed "a motion to quash, not a motion to enforce a subpoena," and that Section 7 of the FAA "talks about a petition to enforce" and "doesn't talk about motions to quash at all." (Opp. at 2; Tr. at 23:1–5).

The plain language of the FAA supports Respondents' position. The relevant portion of Section 7 provides as follows:

> [I]f any person or persons so summoned to testify shall refuse or neglect to obey said summons, upon petition the United States district court for the district in which such arbitrators, or a majority of them, are sitting may *compel the attendance* of such person or persons before said arbitrator or arbitrators, or punish said person or persons for contempt in the same manner provided by law for securing the attendance of witnesses or their punishment for neglect or refusal to attend in the courts of the United States.

9 U.S.C. § 7 (emphasis added). By its terms, this provision is limited to petitions to compel *enforcement* of a summons. Nothing in Section 7, or any other provision of the FAA, authorizes the recipient of an arbitral summons to move to quash it.

9

Here, Barnhurst is moving to quash the Summons and thereby excuse his attendance—not to "compel [his] attendance." He argues nonetheless that a petition to enforce an arbitral summons and a motion to quash an arbitral summons "go hand in hand," such that Section 7's explicit authority to compel enforcement necessarily implies the authority to quash. (Tr. at 12:1–5, 15–24, 15:11–14). And, though not cited by Barnhurst, some case law supports that interpretation. This includes a 1995 decision in this District holding that "implicit within the power to compel compliance with an arbitrator's summons must be the power to quash that summons if it was improperly issued." *Integrity Ins. Co. v. Am. Centennial Ins. Co.*, 885 F. Supp. 69, 72 (S.D.N.Y. 1995); *see also Suratt v. Merrill Lynch, Pierce Fenner & Smith*, No. 03-80502-CIV, 2003 WL 24166190, at *2 (S.D. Fla. July 31, 2003) (finding that "[t]his Court's power to enforce an arbitration subpoena also encompasses the power to quash such a subpoena" and citing *Integrity Insurance*).

However, as Judge Rakoff has noted, neither *Integrity Insurance* nor the cases it cited "analyze the issue in terms of the plain language of the FAA." *Odfjell Asa v. Celanese AG,* 348 F. Supp. 2d 283, 288 n.3 (S.D.N.Y. 2004). Based on the FAA's language, Judge Rakoff expressed "considerable doubt" that it authorizes a motion to quash an arbitral subpoena, "since the FAA nowhere explicitly gives a person subpoenaed to an arbitration the right to move in a federal district court to quash the subpoena." *Id.* at 288.[7] And at least one other federal district court,

---

[7] Ultimately, Judge Rakoff did not need to decide this issue, having concluded that the motion in *Odfjell* was unripe in any event. *See id.*

relying on the plain language of Section 7 and Judge Rakoff's decision in *Odfjell*, found it lacked jurisdiction to rule on a motion to quash an arbitral summons and thus "denie[d] the motion to quash without prejudice." *Matter of Arbitration Between Tang Energy Grp., Ltd. v. Catic U.S.A.*, No. 3:15-mc-80209-LB, 2015 WL 4692459, at *2–3 (N.D. Cal. Aug. 6, 2015).

This Court concurs with the latter view. The language in Section 7 is "straightforward and unambiguous." *Life Receivables Tr. v. Syndicate 102 at Lloyd's of London*, 549 F.3d 210, 216 (2d Cir. 2008). Unlike Rule 45, which explicitly authorizes motions to quash nonparty subpoenas issued by a court, *see* Fed. R. Civ. P. 45(d)(3), Section 7 contains no such authorization. It authorizes only a petition to compel attendance. In other words, as the Fourth Circuit has held, the FAA's "only mechanism for obtaining federal court review [of an arbitral subpoena] is the petition to compel." *COMSAT Corp. v. Nat'l Science Found.*, 190 F.3d 269, 276 (4th Cir. 1999). This Court is therefore not authorized by the FAA to entertain Barnhurst's motion to quash.

To the extent the *Integrity Insurance* court discerned in Section 7 an "implicit" power to quash an arbitral summons, *see* 885 F. Supp. at 72, that reasoning stands in tension with Second Circuit precedent highlighting the importance of adhering to the FAA's statutory text. Importantly, the *Integrity Insurance* court also read into Section 7 a separate "implicit[]" power on the part of arbitrators to compel the production of documents from nonparties prior to the arbitration hearing. *See id.* at 73 (holding that "[t]he power of the [arbitration]

11

panel to compel production of documents from third-parties for the purposes of a hearing implicitly authorizes the lesser power to compel such documents for arbitration purposes prior to a hearing") (citation omitted).  Yet when this issue later came before the Second Circuit, that court specifically abrogated *Integrity Insurance* on this point, holding that in light of the statute's "straightforward" and "unambiguous" language, Section 7 does *not* authorize arbitrators to compel pre-hearing document discovery from nonparties.  *Life Receivables,* 549 F.3d at 215–17 & n.6.

In reaching that conclusion, the Second Circuit acknowledged that "[t]here may be valid reasons to empower arbitrators to subpoena documents from third parties[.]"  *Id.* at 216.  Nonetheless, the court held, "we must interpret a statute as it is, not as it might be, since 'courts must presume that a legislature says in a statute what it means and means in a statute what it says.'"  *Id.* (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992)).  The court stressed that "[a] statute's clear language does not morph into something more just because courts think it makes sense for it to do so."  *Id.*[8]

---

[8] Many other decisions from the Second Circuit as well as the Supreme Court, since *Integrity Insurance* was decided, emphasize the importance of enforcing the FAA as it is written and frown on extra-textual interpretations.  *See, e.g.*, *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65, 68 (2019) (rejecting judge-made exception to FAA § 2's mandate to enforce arbitration agreements, and reasoning that "[w]e must interpret the Act as written" and "we are not at liberty to rewrite the statute passed by Congress and signed by the President"); *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001) (finding that "the text of the FAA forecloses the construction of § 1 followed by the Court of Appeals in the case under review"; although there were "not insubstantial" arguments favoring excluding employment contracts from the FAA's scope, "this fact alone does not give us basis to adopt, 'by judicial decision rather than amendatory legislation,' an expansive construction of the FAA's exclusion provision that goes beyond the meaning of the words Congress used" (quoting *Gulf Oil Corp. v. Copp Paving Co.*, 419 U.S. 186, 202 (1974))); *Katz v. Cellco P'ship*,

These same principles apply with equal force to the question of whether Section 7 can be construed to confer an implied right to move to quash an arbitral summons. In this context, too, the Court must take the statute "as it is, not as it might be." *Id.* at 216. Whether or not it would be desirable for the FAA to allow for motions to quash, "those relying on Section 7 of the FAA must do so according to its plain text[.]" *Id.* at 218. And the plain text of Section 7 does not authorize recipients of arbitral summonses to file, or district courts to grant, motions to quash.

Enforcing the plain language of Section 7 does not leave nonparties like Barnhurst powerless to obtain judicial review of an allegedly invalid or improper arbitral summons. *Cf. Life Receivables*, 549 F.3d at 218 ("Interpreting section 7 according to its plain meaning does not leave arbitrators powerless to order the production of documents.") (citation omitted). When a nonparty receives a court-issued subpoena, he or she must either comply with the subpoena or move to quash it prior to the return date of the subpoena. *See Rinaldi v. NICE*, No. 19 Civ. 424 (LGS) (KNF), 2020 WL 4340640, at *5 (S.D.N.Y. July 27, 2020) (where nonparty "failed to make a timely motion to quash or modify the plaintiff's subpoena" on certain grounds, its "objections, based on those grounds, [were] waived"); *Nike, Inc. v. Wu*, 349 F. Supp. 3d 310, 320 (S.D.N.Y.) ("In order to be timely, a motion to quash

---

794 F.3d 341, 345–46 (2d Cir. 2015) (holding that "[t]he plain language" of FAA § 3 requires district courts to stay action after granting motion to compel arbitration; although "efficient docket management" considerations may support dismissing certain arbitrable matters, "this is not reason enough" to "trump [FAA § 3's] statutory mandate").

13

a subpoena generally must be filed before the return date of the subpoena.")
(citation omitted), *aff'd*, 349 F. Supp. 3d 346 (S.D.N.Y. 2018); 9A Wright & Miller,
*Federal Practice & Procedure* § 2453 (3d ed. Apr. 2026 update) (noting that even
when an attorney issues a subpoena in a federal case, the attorney does so "as an
officer of the court," and "noncompliance with [the] subpoena by the recipient is an
act in defiance of a court order").

By contrast, an arbitral summons is not issued by a court and does not have
the effect of a court order. *See Bd. of Educ. of City of Chicago v. Illinois Educ. Labor
Relations Bd.*, 3 N.E.3d 343, 352 (Ill. Ct. App. 2013) ("[A]rbitral subpoenas
themselves are not court orders."). "[O]nce subpoenaed by an arbitrator the
recipient is under no obligation to move to quash the subpoena. By failing to do so,
the recipient does not waive the right to challenge the subpoena on the merits if
faced with a petition to compel." *COMSAT*, 190 F.3d at 276. Thus, a nonparty may
wait and raise his or her objections to an arbitral summons in response to a petition
to compel pursuant to Section 7. *See* Thomas H. Oehmke & Joan M. Brovins, 2
*Commercial Arbitration* § 69:17, Westlaw (database updated December 2025)
(noting that "[i]f the arbitrator issues a subpoena (which the FAA calls a summons),
a witness is free to disregard the subpoena altogether" and subsequently raise
objections to the summons in front of the district judge presiding over the
requesting party's petition "to compel the attendance of the witness before the
arbitrator").

14

At oral argument, Respondents stated that they intend to file a petition to compel Barnhurst's compliance with the Summons in the District of Utah. (Tr. at 7:11–25). Barnhurst may therefore raise his objections to the enforceability of the Summons—including his assertion that he cannot be compelled to attend a hearing in Utah because the seat of the arbitration is New York—at that time. (*See also* Tr. at 26:3–16 (Respondents' counsel stating that "all of this [including Barnhurst's argument that he cannot be compelled to testify in the Arbitration] needs—should be litigated in front of the District of Utah . . . via a petition to enforce")).

A similar legal framework governs another type of non-court-issued subpoena: those issued by administrative agencies. In *Schulz v. IRS*, 395 F.3d 463 (2d Cir. 2005), for example, the Second Circuit held that "federal courts do not have jurisdiction over motions to quash IRS summonses in the absence of some effort by the IRS to seek court enforcement of the summons." *Id.* at 465. The Second Circuit thus affirmed the dismissal of a lawsuit seeking to quash a series of administrative summonses served on the plaintiff by the IRS, noting that if the IRS sought to compel compliance with the summonses pursuant to 26 U.S.C. § 7604—which, like Section 7 of the FAA, provides a mechanism for the IRS to obtain a court order compelling compliance, but does not authorize a motion to quash—"then the procedures set forth in [the statute] will afford [plaintiff] ample opportunity to seek protection from the federal courts." *Id.* at 464.

The rule described in *Schulz* applies generally to administrative summonses and subpoenas issued by federal and state agencies. *See, e.g.*, *Khan v. McDonald*,

15

No. 24 Civ. 4745 (JMA) (ST), 2025 WL 2933168, at *12 (E.D.N.Y. Aug. 12, 2025) ("[C]ourts have found that seeking to quash an administrative subpoena is premature, and thus not ripe for judicial review, where the government agency has issued the subpoena, but not yet sought to enforce it."); *Mohammadi v. Tong*, No. 3:24-cv-1473-KAD, 2025 WL 1029862, at *1–2 (D. Conn. Apr. 7, 2025) (denying without prejudice motion to quash subpoena issued by state attorney general, and noting that "[t]he AG's subpoena is not self-enforcing" and that "[i]f the AG ever moves [the state court] to require [plaintiff's] compliance with the subpoena, then [plaintiff] could object to his motion in [state court]"); *Gen. Aluminum Mfg. Co. v. Walsh*, No. 5:21MC048, 2021 WL 4310592, at *1 (N.D. Ohio Sept. 22, 2021) (dismissing without prejudice movant's motion to quash administrative subpoenas *ad testificandum* issued by the Secretary of Labor, and noting that movant "can . . . raise its procedural and substantive objections to the [subpoenas] in" a separate action instituted by the agency seeking to enforce the subpoenas pursuant to federal statute); *Lopes v. Resolution Tr. Corp.*, 155 F.R.D. 14, 15 (D.R.I. 1994) ("'Due to lack of jurisdiction, the courts will not entertain motions brought by the subpoenaed party to quash or modify [administrative] subpoenas. . . . Since agencies lack the power to enforce their own subpoenas, they must apply to the district courts for enforcement. Only then may substantive or procedural objections to the subpoena be raised for judicial determination.'" (quoting Stein, Mitchell & Mezines, *Administrative Law* 21.01(1) at 21-4 (1990))).

16

As the administrative subpoena cases demonstrate, it does not follow from the mere fact that a subpoena has been issued that the recipient has a right to move to quash it. Where the subpoena is not self-enforcing, and the relevant statutory scheme requires the party issuing the subpoena to move or petition a court to enforce it, then the recipient does not need, and in the absence of an explicit grant of authority does not have, the ability to move to quash the subpoena. That is true in the case of an administrative summons or subpoena, and it is equally true of an arbitral summons issued under Section 7.

Accordingly, the Court concludes that it lacks the power to quash the Summons issued to Barnhurst under Section 7 of the FAA.

### 2. Fed. R. Civ. P. 45

Of course, motions to quash are explicitly authorized under Rule 45—at least in the case of a court-issued subpoena. In his Motion (although not his accompanying memorandum of law), Barnhurst relied on Rule 45 without mentioning Section 7. (*See* Dkt. No. 1 (stating that Barnhurst "hereby moves this Court for an order pursuant to Fed. R. Civ. P. 45(d) and Local Civil Rule 37.2, quashing the summons issued to Movant by Respondents")).[9] At oral argument, however, Barnhurst's counsel disclaimed reliance on Rule 45 as the basis for the motion to quash and instead relied on Section 7. (*See* Tr. at 19:6–11 ("THE COURT:

---

[9] Local Civil Rule 37.2 merely sets forth a procedure for resolving discovery-related disputes and is not the source of a party's power to move to quash. *See* Local Civ. R. 37.2 (outlining that the moving party must "request[] an informal conference with the court by letter motion" before the court hears a motion under Fed. R. Civ. P. 26 through 37 or Fed. R. Civ. P. 45).

17

. . . [A]re you relying on Rule 45 as the source of my jurisdiction or venue to entertain your motion to quash?  [COUNSEL]: No, Your Honor.”); *see also id.* at 18:23–19:5).  The Court therefore need not decide whether a motion to quash an arbitral summons may be filed under Rule 45.

But even if Barnhurst were moving to quash the Summons under Rule 45, the motion could not be filed in the first instance in this District.  Rule 45 requires that a motion to quash a subpoena must be filed in the “court for the district where compliance is required.”  Fed. R. Civ. P. 45(d)(3)(A).  Courts have taken different views as to where “compliance is required,” with some finding it to be the “location or place stated on the subpoena” and others concluding it is the “location of the subpoenaed person or entity.”  *Thompson Props., LLC v. Farmers State Bank*, No. 1:23-CV-624, 2023 WL 9118646, at *1 (W.D. Mich. Dec. 5, 2023); *see also Cleary v. Kaleida Health*, No. 22 Civ. 26 (LJV) (JJM), 2024 WL 1297708, at *3 (W.D.N.Y. Mar. 27, 2024) (noting the divergence in the case law and stating that “[c]ourts in the Second Circuit . . . follow the latter view”).  Under either interpretation, the district of compliance here is Utah.  That is both the state where the Summons directs Barnhurst to testify (Barnhurst Decl. Ex. A at 1) and the state where Barnhurst lives (*id.* ¶ 3).

Under Rule 45, a motion to quash a subpoena may be transferred from the district where compliance is required to the “issuing court” if “the person subject to the subpoena consents or if the court finds exceptional circumstances.”  Fed. R. Civ. P. 45(f).  Assuming, without deciding, that this rule can apply in the context of an

18

arbitral summons (even though no "issuing court" exists in such a scenario), courts have held that the subpoena recipient is still required to file the motion to quash in the first instance in the district of compliance. *See, e.g.*, *In re Smerling Litig.,* No. 21 Civ. 2552 (JPC), 2022 WL 684148, at *2 (S.D.N.Y. Mar. 8, 2022) (finding that motion to quash a deposition subpoena issued to a Boca Raton, Florida resident, and requiring attendance in Boca Raton, should have been filed in the Southern District of Florida); *Arrowhead Cap. Fin., Ltd. v. Seven Arts Ent't, Inc.*, No. 14 Civ. 6512 (KPF), 2021 WL 411379, at *3 (S.D.N.Y. Feb. 5, 2021) ("Because the subpoenas issued to PPL require compliance in Los Angeles, where PPL has its principal place of business, PPL should have brought its motion in the United States District Court for the Central District of California.") (cleaned up); *Phi Theta Kappa Honor Soc'y v. Honorsociety.org, Inc.*, No. 3:22-CV-208-CWR-RPM, 2025 WL 2557388, at *1 (S.D. Miss. Jan. 30, 2025) ("'Even though it is true that Rule 45(f) permits the Compliance Court to transfer a subpoena-related motion to the Issuing Court if the person subject to the subpoena consents or if the Compliance Court finds exceptional circumstances, the fact remains the motion must still be filed in the first instance with the Compliance Court.'" (quoting *Diamond Consortium Inc. v. Manookian*, No. 4:16-CV-94-ALM, 2016 WL 9274962, at *3 (E.D. Tex. Oct. 25, 2016))) (cleaned up).

Therefore, any motion to quash by Barnhurst under Rule 45 would have to be filed in the District of Utah.

*     *     *

19

Having concluded that it lacks the authority to adjudicate Barnhurst's

motion to quash, the Court does not reach the other arguments presented in the

parties' submissions.[10]

## CONCLUSION

For the foregoing reasons, the undersigned respectfully recommends that

Movant Paul Barnhurst's motion to quash be **DENIED** without prejudice.

DATED:     New York, New York
           May 5, 2026

_Gary Stein_
_____
The Honorable Gary Stein
United States Magistrate Judge

---

[10] Based on the parties' arguments, the Court understands that, should Respondents file a petition in the District of Utah to compel Barnhurst's testimony, Barnhurst will take the position that the petition is improperly filed in that District, because under Section 7 of the FAA a petition to compel attendance must be filed in the district in which the arbitrators "are sitting," 9 U.S.C. § 7. (*See* Mot. at 7–8; Tr. at 16:21–17:13, 54:22–55:10). Respondents, by contrast, will take the position that the District of Utah may properly adjudicate their petition to compel enforcement under Section 7. (*See* Opp. at 2–8; Tr. at 47:24–49:24). This Court expresses no opinion on the proper resolution of this question, which will be for the court in the District of Utah to decide.

## NOTICE OF PROCEDURE FOR FILING OBJECTIONS
## TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. Section 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen days, inclusive of weekends and holidays, from service of this Report and Recommendation to file written objections thereto. *See also* Fed. R. Civ. 6(a), (b), and (d). Any such objections shall be filed with the Clerk of Court. Any request for an extension of time to file objections must be directed to the Honorable John P. Cronan. A failure to file timely objections will preclude appellate review. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

21